This is our second case of the morning, Foster v. Mitsubishi Motors, 416-0199, for the appellant, Mr. Elwood, and the appellee, Mr. Nakora. You may proceed. Good morning, Brad Elwood, on behalf of Mitsubishi Motors. Today we're before the court on an appeal from a 19-G action filed in the circuit court by my opponent. A 19-G action is an enforcement proceeding respecting a workers' compensation case. As we noted in our brief, a workers' compensation decision is not a judgment. In order to reduce it to judgment for the purposes of enforcement, you must file a 19-G, which is what my opponent has done. This is a case, Your Honors, where the arbitrators awarded a death benefit in a case where, in 2004, the petitioner, Pro Se, appeared with counsel for my client. Let me stop you. In this case, somebody made a mistake and it didn't get corrected. Essentially, this is a case where there was a mistake that was made in the arbitrator's decision and no one caught it. It was not directly appealed. Why should we do anything about it now? Well, I think at this point, Your Honor, we raised several issues in our brief as to why we think that the circuit court's decision was wrong. The two that I'd like to talk about today with you relate to the question of when a circuit court is presented with a 19-G, do they have the authority to ask whether the commission's decision was justified from the standpoint of whether it was void? Did they have jurisdiction to do what they did? And if they did have jurisdiction, then their powers are limited to basically enforcing the award as it stated. One of the issues that we've raised today is whether or not, in this case, the circuit court should have taken a look at this case and asked, did the commission, and I say commission because when an arbitrator's award is rendered and it's not appealed, it becomes a commission decision. We believe the circuit court here should have taken the opportunity to look at the commission's decision and say, did it have the power to enter the award as it entered it? Now, and there's two parts of the award here. Certainly, the commission has the authority to enter a death benefit award. Obviously, we know that. The question is, does the commission, which has limited jurisdiction on what it hears created by the Workers' Compensation Act, does it have the authority and jurisdiction to render an award for benefits that are not provided by the Workers' Compensation Act? And as we've argued in our brief, death benefits are controlled by Section 7 of the Act. Section 7 specifically refers to, we calculate benefits for death benefits. We calculate the percentage and the amounts by looking at the rates that are provided in Section 8B. 8B says that the rate is calculated, we have the average weekly wage times the 66 and two-thirds percent, and that's the rate that we use. But Subsection 4 of 8B says that there's a max rate, a maximum rate that must apply. And in this case, the award that was entered, as you were insinuating, Your Honor, it was $1,304 a week. The max rate applicable to that death at that time was $1,012 a week. And so our position is, when a circuit court is given the opportunity to evaluate a commission's decision for the purposes of 19G, the first thing they do is say, did the commission have jurisdiction to enter this award? And if they conclude that they did, then the next question is, do I enforce it? And here, the cases that we cited, and we did file a motion to supplement with a couple additional cases. I did give my opponent a copy of those on Monday. We would ask the Court to give us leave to file those. But what those three cases say is essentially this. That a circuit court can take a look at a commission decision in the process of evaluating the 19G and ask, was the commission acting within its jurisdiction? And I think the one case that talks about, the Flynn case, talks about 19K, whether the commission in that instance had the authority to issue penalties at the moment that it did, is very instructive here. Because what we're saying here is not that they couldn't award death benefits, but that the amount violated the statute. They made an award they had no power to enter. And for that reason, we think it's a void award. And as we cited in our brief, a void order is made when a court acts without the inherent power to enter the particular order entered. The commission here did not have the inherent power to enter an award in excess of the max rate on the death benefit. And the law says when an agency enters a decision that it has no statutory power to enter, it's void. And a void order can be attacked at any time. And so for those reasons, we think that this Court should find that, one, the circuit court should have considered that and perhaps remanded. But two, I think the Court under 366 has the power to look at this and say, yes, we can evaluate this jurisdictional issue first. And as a matter of law, it was void. And set that aside. Now, again. We see this issue a lot in criminal cases. You know, people say, oh, the Court didn't have jurisdiction, the order is void. And we know that an order is only void if there is not jurisdiction. I don't agree with the distinction you're making between the ability to enter the order versus the amount. I don't think the amount goes to jurisdiction. Well, I think it might go between the difference between a void judgment and a voidable judgment. And a void judgment is only one entered by a court without jurisdiction. Right. And in this case, I think the Court. It's subject to jurisdiction. I'm sorry. A void order is an order entered by a court that does not have subject to jurisdiction. Right, exactly. Exactly. And the cases that we cited also talk about. It talks about a void order being one where the Court lacks subject matter, jurisdiction, personal jurisdiction, or enters an order without the inherent authority to enter that particular order. And we don't have any of that here. Well, I think we do. The Commission had no authority to enter an award for debt benefits that were in excess of the max rate amount. It's statutory. Your client could have taken an appeal right at that point in time. Well, theoretically, yes. But as Your Honor pointed out, neither party picked this up. And the thing I think is important to keep as a backup in this case is that we were always obligated to pay the statutory rate in this case. And we did. We paid it before we walked into the arbitrating room that day in 2004. And we paid it every day afterwards all the way up until it was discovered and this whole controversy developed. This is not a situation where we refuse to pay an amount. The legal amount that we owed, we paid. And I think that backdrop for this case is important. And until you got the arbitrator's decision set aside or reduced, weren't you obligated to pay the amount the arbitrator awarded? Not if the arbitrator in this case didn't have the authority to make that award. So you just walk away and ignore what the arbitrator said? No, I think in a case like this where there's a portion of the award that's justified, certainly the death benefits up to the max rate are certainly justified. And we have been paying that. And so those amounts are not an issue. But you were paying a lesser amount without knowing or bringing to anyone's attention that the order itself appeared or did exceed the statutory maximum. Yeah, but we didn't know that. No, that's true. Well, you didn't know it. You got a copy of the order. You knew it. Well, apparently, I can't speak to what happened. We know it wasn't you. Well, I know. Thank you. You're welcome. But we can only guess what happened back then. We tried to reconstruct it. But we, you know, the people, you can't always reconstruct things that happened that many years ago. Well, I can guess that it was done by Roe. I think in this case, it was the same rate we were paying beforehand. You know, this is not a case where we were paying, say, the $1,300 a week and the arbitration decision comes and we stop and we make it the $1,012 a week. I mean, we clearly understood when we started making these payments before this arbitration that our obligation was to pay the death benefits at the maximum rate. And we paid those. And the fact that no one picked that up over the course of time until they stumbled across it in the third-party litigation, which is what I believe happened as they were putting together what the setoffs are, that's when this all came about. So we think, one, that we have an argument here, I think a strong argument. I think that we cited one of the cases, and forgive me if I'm wrong, but I think it might have been the – there was a criminal case we cited in our brief as well that talked about exactly the point that you had raised, Your Honor. But I do think in this case we do have the ability to look not only at the judgment on the personal jurisdiction or the subject matter, but look at the inherent power to issue the order. And that's where we get the fact that this was issued without authority of the statute. Now, the second thing I want to point out is the argument that we raised about the Gurnitz case, the inherent inconsistency. And I apologize, I believe they used irreconcilable inconsistency. But when I practiced this argument, I realized I can't say that word quickly. So I'm going to call it the inherent inconsistency. When you look at Gurnitz, what Gurnitz says is that when a circuit court, similar to how it approaches an order that may be void, when a circuit court looks at a commission's decision that's been presented for the purposes of 19G, it has to determine, can I tell what's owed? Can I determine what the commission was intending to do here? How much money I'm supposed to actually enter a judgment for? And in the Gurnitz case, there was a discrepancy in the order as to the amount. And what had happened there was that there was an arbitration decision that was entered under the permanent partial disability. The commission modified that and made it a permanent total disability. But on the activation dates, they had one amount payable before that date and another amount payable after that date, a lesser amount. And the interesting part of that case is the employer then, after the appeal, they appealed it. Nobody caught this through their whole appeal process in that case. When the time came to pay the award, the employer cut the check for the higher amount up to this particular point and then cut the 410OE amount, which was the lower amount, afterwards. And the employee said, no, you owe, this was a permanent total disability award under 8F. You owe that $782 a week. And the employee said, well, no, the decision says I owe 410. So they go and they litigate this. And what the appellate court did is they looked at that case and said, well, the award said a permanent total disability as provided in Section 8F of the Act. And so the court went to Section 8F and said, well, how do you calculate the disability? What's the percentages that you use? And when they did, they saw it was the 66 and two-thirds, and they looked back at the commission's decision and they said that 410 was wrong. That 410 should have been the higher amount, the 782, I think it was. And so the court said there's an inherent inconsistency in the commission's decision by awarding what they call the permanent total disability benefit under Section 8F, but yet awarding an amount that was inconsistent with an 8F percentage. So what I'm saying in this case, the inconsistency here is not as my opponent has said in his brief. Well, the decision itself here doesn't say, well, Mr. Bichy owes 1,012 in one part, and in another part it says it owes 1,306, and there's an inconsistency about which one of those, so therefore it can't be an inherent inconsistency. When we look at Gurnett's, it says in determining what the award is, where the commission says pursuant to statute, we can look at that statute and say, what's the rate? That's different than what we have here. Because in our case, the commission and the arbitrator set a certain amount. No, what the court did here is it made an award of death benefits pursuant to Section 7 and it identified the 1,304 a week. And what we're saying is that when you look at the death benefit statute that it was made pursuant to, Section 7 clearly makes reference and it says benefits are to be determined under Section 8. You look under Section 8B, it says it's 66 and two-thirds, and 8B4 says that amount is subject to the maximum weekly compensation rate, and it sets that when we go to the charts, it comes out at the 1,012 dollars. So the inherent conflict in this case is the award of the 1,304, or 1,304 a week, made pursuant to Section 7. Because when it says award pursuant to Section 7, it means we can look at Section 7 to say, well, what is the award? How do you make an award in this circumstance? And it says the mechanics of it. And when you do the mechanics, the numbers don't match. So that's an inherent inconsistency in the decision. Mr. Arnold, what about the cases that say the court can't question the jurisdiction of the commission in these 19G proceedings, can't question the legality of the commission's actions, or review the commission's decisions, or otherwise construe the act, even if the decision appears too large on its face? I think the heiress case that they cited talks about that, and I think the misconception here is that we're not coming in in a case and saying, we think permanency that was awarded at 10 percent should be 10 in our case. We don't think that there was an evidentiary error. We're not attacking the actual commission's decision. What we're saying here, we're not saying it's too large. In other words, you could have awarded less than 50 percent of a person. You could have awarded 25 percent, so we're not going to pay that. No, you can't do that. The heiress says that you cannot do that. You can't attack evidentiary rulings. You can't attack misperceptions of case law, that type of thing. But here, we're saying that the award is wrong because it violated the statute, and it was void, and the commission had no authority to award it. And it's not the whole death benefit. Again, please don't misunderstand me. It's that $270 some dollars, $292 a week difference between the 1302, 1304, and the 1210. That's the difference. That's what the commission didn't have the authority to award, and that's why it's void, and that's why there's an inconsistency. And that's why we're asking the court to reverse this and to limit the judgment that's been entered to that amount. When you have a death benefit, it's going to be paid over time. It's going to be paid from today forward to whenever the terms are met and satisfied and the obligations end. So if you want to enter judgment, enter judgment for the 1012 a week. We don't have any problem with that, and we think that's completely legitimate because obviously there's future payments, and it protects him. I have no problem with that. The issue that we have is that our obligation has always been from day one to pay this gentleman death benefits subject to the maximum rate, and we've done that. And I know there's mistake. I know if somebody had read it closer, they'd have caught it. They didn't catch it. We didn't catch it. It went on for a long time. But that doesn't mean that this court can't look at a 19-G in these two contexts that we've provided. One, it comes to the circuit court. I can say, is it void? If it's not void, then I say how much? I look at it. I say, I can't tell how much. I have to figure out how much. I can look at the award. As long as it says award pursuant to section X here, section 7, then I can find an inherent inconsistency if one exists. At that point, if you cross those hurdles, then it becomes time to enter the award. And that's a different ballgame. Thank you. Thank you, Mr. Butler. May it please the Court. Go ahead. I think the Court understands here that the controlling precedent in this case is the stuff that you've seen in, unfortunately, buried in the second-to-last portion of my brief, and it's the series of cases that I led with beginning with the Supreme Court decision in the Ehlers versus Sears Roebuck case. And I cite cases cited after that from the second, the third, and the fourth district, the fourth district case being the case that Justice Connick used to head on. All of those cases use language essentially as follows. I'm pulling this out of the Ehlers case. A circuit court's inquiry under section 19G is limited to a determination of whether the requirements of the section have been met. The court may not question the jurisdiction of the commission or the legality of its actions. Especially relevant is the Shore case in which it was held that the circuit court must, if a certified copy of the award or decision is presented, enter the judgment even though the award may be too large. The circuit court may refuse to enter judgment only, for example, when a lack of jurisdiction appears on the face of the record, even though the award is too large. Now, the only arguments that have been raised against that have been, and I credit my opponent for being very imaginative here, reading the case, the Kurnitz case, which I respectfully suggest does not stand for the proposition that you can look outside the document itself, the decision of the arbitrator or the commission itself, to find the consistency. Now, when you look at the opinion, or excuse me, the decision of arbitrator White in this case, it's very straightforward. There are only two dollar figures mentioned in the whole thing. The one dollar figure is the $1,304 per week. The other dollar figure is the $4,200 for burial expenses. There's nothing about this document that is in any way inconsistent on its face. This document, which is found at pages A7 and A8 of the appendix, doesn't even refer to the statute under which the death benefit was awarded. If it did, then you would see that the argument about inconsistency might have more weight. Might, might. I use the word might. Thank you. I repeat that, yes. But once you start, the whole idea behind 19G is to take an award and convert it into a judgment. It's not an opportunity to relitigate the case. They had that opportunity on two occasions. Right after this order was entered, you can correct a clerical or computational error within 15 days, and you can appeal the thing within 30 days. And they didn't take advantage of that. And interestingly enough, the order even refers to the right to appeal. Unless a party files a petition for review within 30 days, then the decision shall be entered as a decision of the commission. So this is, it should be bulletproof. Now, we can talk about the idea of, well, maybe if there wasn't jurisdiction in the first place, and there is some case law that does insert the idea about absent fraud or lack of jurisdiction. Well, there's no fraud here. As far as jurisdiction, there's two kinds of jurisdiction. There's personal jurisdiction, and there's not any contest about that here, and subject matter jurisdiction. Now, arbitrator White, her job is to determine, in this case, what the death benefit ought to be. Generally speaking, they're charged with determining what benefits ought to be awarded. They write down a number that they think ought to be the award. Sometimes that might be too high. Sometimes that might be too low. There's a remedy to fix that. Appeal it within the commission within 30 days. That didn't happen here. To say that she didn't have the power to enter that kind of stretches the concept of what power a person in her position would be. If she, for example, if she would have said, in addition to awarding the $1,304, said that, and I'm requiring the employer to remedy the condition that caused this man's death, that obviously would be past her subject matter jurisdiction. But that's not what happened here. When discussing that idea about did she have the power to do this, we discuss actually two cases that were actually cited by the appellate here, the estate of Seinfeld and the case of Newkirk v. Begar. Both of these are Supreme Court cases. Both of these involve the same kind of claim, that there's a statutory scheme. The court below, or in the Newkirk case, the mining board of the state of Illinois entered an order that was clearly deficient. It lacked a lot of things that should have been included in that order. And it was obviously deficient. And nevertheless, the court indicated and stated that to try to say that the order is somehow void, they say to accept the argument that a statutorily defective order rendered the order void would allow the exception to swallow the rule. The argument would allow a collateral attack on an order whenever an agency failed to follow the exact letter of the statutory provision. A party could merely point to any provision of the statute which was not complied with, claim the agency did not have authority to act unless that provision was complied with. So this is a backdoor attempt to get what they should have gotten if they wanted it within 30 days of the event. I'm sorry, what was the name of that case that you just quoted? It's found on page four and five of my brief, Your Honor. It's Newkirk v. Beguard. Newkirk? Newkirk, yes, Your Honor. It's found at 109 Hill Second 28. And I read you the quote that I put in my brief on that. You can't attack these cases collaterally by saying that, well, the underlying decision maker here somehow crafted an order that was outside of what the range of the conclusions are that they could have come to. And as I said, the litany of cases that I talk about that use the language that even though the award may be too large, a 19G petition must be granted takes care of that. It was too much money here under the statute. The statute, by the way, is not, as I said, not to my observation here even mentioned in the award. So there's no inconsistency on the face of this. There's no ambiguity in this that needs any kind of decision by either the trial court or a court of review. It's very straightforward. They had their opportunity to fix this. They didn't take advantage of it. Counsel, can you talk a little bit about the interest issue? Sure. The statute could not be more clear. When you have an award, of which this is certainly one, and that award is subsequently reduced to a judgment, the statute clearly states that you get to go back to the date of the award to apply the judgment interest rate of 9%. Now, it's not just me saying that. There were two cases. There was the Dosevich case, and I think, Justice Connett, you were on that panel. I probably don't remember, but I'm sure you decided a lot of cases. And the decision in that case and its reasoning and the specific holding was adopted by Sunrise Living, both of these cases that I've cited. The 9% goes back to the day the award was entered. And as much as, you know, as I said, the statute on its face makes that clear, but you have two cases that tell you that that's exactly the way you're supposed to compute the interest. Thank you. I don't have anything else to say unless the... Do you have any objection to the motion to file supplemental authority? No, I guess not. Well, I'll say no, although I kind of find it surprising. These cases weren't like subsequently decided cases, but no, that's fine. Thank you. Can I ask this, though? If anyone thinks that those cases are in some way dispositive... You have a chance to reply. Yes, sir, if you don't mind. That sounds fair. Okay. Nothing is not fair. Sorry? Nothing is not fair. That's right, absolutely. Thank you. Thank you very much. Mr. Elwood? We obviously have no objection if he wants to reply. That's fine with us. Your Honor, there's a couple of things I want to point out. One, the decision here does specifically refer to Section 7. It is on page A8 of our appendix, C28 of the record. Also on page C27A7 of our appendix, this says regarding a fatal claim. When the arbitration decision is rendered at the top, it talks about the type of claim, and if it's a fatal claim, it's a Section 7 claim. There's no question about that. There's no ambiguity with the language and the reference to Section 7 that this is a death claim under Section 7, period. It's just not disputable. The second thing I want to point out is we are not asking to re-litigate. We're not asking you to take new evidence. We're not asking you to re-weigh any evidence. We're not asking you to do anything other than say that our obligations ended with the statutory maximum right. That's all we're asking. And the arguments that counsel has made, I'm fully aware of the Healers case, and I've made that argument myself. He's right from the standpoint I can't come in to defend against a 19-B and say, oh, they just gave too many benefits, or they shouldn't allow that doctor to testify, that was an abuse of discretion, all this type of stuff. I can't do that. But if we adopt the argument that counsel is making that Healers allows us just to overlook any question about whether the commission originally had jurisdiction or whether or not the decision is inherently inconsistent and needs clarification so the circuit court knows what it's supposed to enforce, then the entire line of cases with Gernitz, the Burns case that it relies on, the Flynn case, the Kennedy case, the Arnold case, have to be overruled because they do allow you to do that. So I think that's a misstatement. You can read them together if you look at them in the manner that we're suggesting. We're not here to argue that there was too much awarded. I'm not saying it shouldn't have been 50% of a person. I'm saying that they should have awarded what the law allows it to be awarded, which is what we paid. The last thing, Your Honor, you had brought up the question of interest, and I didn't address that in my arguments, but I obviously didn't brief. Our point here is when the Redose case was passed, that was my case, the one thing that it did that we disagreed with at that point was that it allowed interest to reach back in a workers' comp case from the date of the entry of judgment all the way back to the date of the entry of the award. And our problem with that is simply this. While, yes, counsel is correct in how the judgment interest statute 2-1303 is worded. It certainly is worded that way. By having that reach back in a work comp case, now you're conflicting with Section N of the Work Comp Act, which is a specific interest act that applies to work comp cases. And it says in a work comp case, interest shall be paid, according to a certain calculation, from the date of the award until the date prior to payment. Now, if you allow 19N to apply from the date of the award up until the date of the entry of the 19G, and then from the date of the 19G forward, you apply judgment interest because now you have a judgment, then you read those statutes consistently, and they both have a meaning and neither one eats the meaning of the other one. And I think that's consistent. We have to keep in mind in a work comp case that the Commission's decision, as I said when I started, is not a judgment. And by taking a 19G case and applying judgment interest and taking it back to the date of the arbitration award of the Commission decision, we are in essence making now the Commission's decision a judgment subject to that 9% interest. And that's why we think that's wrong. Thank you. Thank you, Counselor. We'll take the matter under advisement. Mr. DeCora, it is always a pleasure to have someone from my class appear before me.